UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| KAREN M. ARIVE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | CASE NO. 1: 04-cv-0099-DFH-WTL |
| | ) | |
| ESSILOR LABORATORIES OF | ) | |
| AMERICA, INC. d/b/a BELL-DUFFENS | ) | |
| OPTICAL, | ) | |
| | ) | |
| Defendant. | ) | |

ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Karen M. Arive worked as a data entry proofreader at an optical laboratory operated by defendant Essilor Laboratories of America, Inc. ("Essilor"). Arive alleges that she was discriminated against and eventually terminated in April 2003 because of her age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* Arive also alleges that her termination violated the ADEA because it amounted to unlawful retaliation for complaining about age discrimination. Essilor claims that it terminated Arive for insubordinate conduct, and it has moved for summary judgment on Arive's discrimination and retaliation claims. For the reasons explained below, defendant's motion is granted as to both claims.[1]

---

[1]Defendant has moved to strike plaintiff's surreply brief for failing to comply with Local Rule 56.1, which allows surreply briefs in opposition to summary (continued...)

*Summary Judgment Standard*

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, affidavits, and other materials demonstrate that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Only genuine disputes over material facts can prevent a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the suit under the governing law, and a dispute about a material fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.*

On a motion for summary judgment, the moving party must first come forward and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which the

---

[1](...continued)

judgment motions for the limited purpose of addressing a moving party's evidentiary objections or supplemental evidence submitted with a reply brief. See Docket No. 65. Defendant is correct as to the vast majority of the long-awaited surreply brief. (The rule provides for seven days to file a surreply brief, but plaintiff asked for and received more than three months to file it.) There are a few slivers of the surreply brief, however, that fit into the permissible purposes, so defendant's motion is denied. The court has not considered those portions that simply repeat earlier arguments.

party believes demonstrate the absence of a genuine issue of material fact.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

When deciding a motion for summary judgment, the court considers those facts that are undisputed and views additional evidence, and all reasonable inferences drawn therefrom, in the light reasonably most favorable to the non-moving party.  See Fed. R. Civ. P. 56(c); *Liberty Lobby*, 477 U.S. at 255; *Celotex*, 477 U.S. at 323; *Baron v. City of Highland Park*, 195 F.3d 333, 337-38 (7th Cir. 1999).  However, a party must present more than mere speculation or conjecture to defeat a summary judgment motion.  The issue is whether a reasonable jury might rule in favor of the non-moving party based on the evidence in the record. *Liberty Lobby*, 477 U.S. at 252; *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 637 (7th Cir. 2001).

*Facts for Summary Judgment*

The following facts are either undisputed or reflect the evidence in the light most favorable to plaintiff Arive as the party opposing summary judgment. Adverse facts established by defendant beyond reasonable dispute are necessarily included in the narrative.

Defendant Essilor owns and operates optical laboratories in several states. Miller Dec. ¶ 3.  These laboratories produce prescription eyewear for optometrists and other eyewear retailers.  *Id.*  In July 2001, Essilor combined its Bell Optical

and Duffens Optical laboratories in Indianapolis into a single facility now known as the Bell-Duffens laboratory.  Miller Dep. at 29-30; Arive Aff. ¶ 3.

Plaintiff Karen Arive began her employment with Bell Optical in 1997 and became an employee of Essilor when it purchased Bell Optical in 1998.  Arive Aff. ¶ 2; Arive Dep. at 16.  At all relevant times during her employment with Essilor, Arive worked as a proofreader in the data entry department of the Bell-Duffens laboratory.  Arive Dep. at 16-21; Gavin Dec. ¶ 5.  Arive's primary responsibility as a proofreader was to review the work orders entered into the computer system by the data entry employees.  Specifically, she compared the work orders generated by data entry with the original doctor prescriptions.  Arive Dep. at 25-26, 33. Arive was the only full-time proofreader.  Arive Dep. at 21; Gavin Dep. at 55.  On occasion, however, other employees would perform proofreading tasks.  Arive Aff. ¶ 30; Smith Dep. at 14.

Travis Miller (33 years old) was the manager of Duffens Optical and became the laboratory manager of the merged Bell-Duffens laboratory.[2]  Miller Dep. at 3, 15-16; Miller Dec. ¶ 2; Arive Aff. ¶ 6.  From July 2002 until July 2004, Marc Gavin (29 years old) served as the operations manager.  Gavin Dec. ¶ 3; Gavin Dep. at 3.  Gavin's responsibility was to supervise multiple departments, including the data entry department.  Gavin Dec. ¶ 3; Gavin Dep. at 19-20.  Gavin reported to Miller, and individual department supervisors (known as "Team Leads") reported

---

[2]All relevant ages are calculated as of early 2003, when Arive was fired.

to Gavin.  Gavin Dec. ¶ 6.  Alicia Smith was the primary Team Lead for the data entry department.  Gavin Dec. ¶ 6; Smith Dep. at 6-7; Arive Dep. at 33.  When Smith was absent or on vacation, Dianne Bell would fill in as Team Lead.  Gavin Dec. ¶ 6; Arive Dep. at 36-37.

Gavin sometimes would instruct the Team Leads to counsel employees about mistakes or performance deficiencies he believed should be noted.  Gavin Dec. ¶ 7.  Gavin typically would prepare an incident report, have Smith review the report, and then add the report to the employee's personnel file.  Gavin Dep. at 56-62.  In December 2002, Smith met with Arive and another employee, Zundra Hornaday, in a conference room to counsel them regarding performance mistakes they had made.  Arive Dep. at 24-27, 62-65.  Hornaday was a data entry employee who had typed a mistake, and Arive had missed the mistake in proofreading.  Arive Aff. ¶ 27.  During this meeting, Arive told Smith that she believed it was age discrimination that younger employees were not written up even though they made more mistakes.  Arive Aff. ¶ 33; Arive Dep. at 62-68, 74-75.  Arive was 61 years old at the time.  See Arive Aff. ¶ 1.  According to Arive, Hornaday was "in her 50's."  Arive ¶ 34.

In January or February 2003, Smith met with Arive and another employee, Penny Miller, in a conference room to counsel them about performance mistakes they had made.  Arive Dep. at 71-75.  Miller had typed a mistake and Arive had missed the mistake in proofreading.  Arive Aff. ¶ 36.  Arive again complained to

Smith that she thought it was age discrimination because younger employees were not written up for similar mistakes.  Arive Aff. ¶ 38; Arive Dep. at 62-63, 71-75. According to Arive, Penny Miller was also "in her 50's."  Arive Aff. ¶ 39.

On some occasions during 2002 and 2003, Essilor would send home certain hourly employees before the end of their shifts if the volume of work was light in their department.  Gavin Dep. at 78-80.  Arive testified that this often happened to her.  Arive Dep. at 37.  On Thursday, April 3, 2003, around 2:00 p.m., Gavin instructed Arive to leave early due to a lack of work.  Arive Aff. ¶ 50; Arive Dep. at 37-39.  Arive had just returned from lunch with a co-worker.  Arive Aff. ¶ 51. Arive believes that she then asked Gavin if she could stay, but he said that he wanted her to leave.  Arive Dep. at 39-40.

Arive had missed some work over the previous two days trying to resolve car problems.  Arive Dep. at 40-41.  She told Gavin that she was going to take off the next day (Friday) to figure out what was wrong with her car.  *Id.* at 41.  The parties dispute what happened next.  Arive testified that Gavin said nothing in response and so she turned and left the building.  Arive Dep. at 41-43.  Gavin testified that he asked Arive to come to his office and talk to him about her statement that she would not be at work the next day.  Gavin Dec. ¶ 11; Gavin Dep. at 85.  Gavin testified that Arive did not respond, but turned away from him and walked toward the time clock.  He testified that he again told Arive that he wanted to talk to her, but she looked at him, clocked out, and left the building without responding.

Gavin Dep. at 84-86.   Dianne Bell testified that she witnessed the interaction between Arive and Gavin.   Bell testified that she heard Gavin ask Arive to speak with him and saw Arive ignore him and keep walking.   Bell Dep. at 40-43.   Arive testified that she never heard Gavin's request to speak with her.   Arive Aff. ¶ 93.[3]

Gavin called laboratory manager Travis Miller and reported the incident involving Arive.   Gavin told Miller that Arive did not follow his instruction to come to his office and talk with him.   Gavin Dep. at 91-93; 117-18.   Gavin told Miller

---

[3]For purposes of this motion, the court does not rely on certain facts relating to Arive's alleged interaction with Bell on April 3rd.   Arive's testimony is inconsistent as to whether Gavin or Bell instructed her to leave early due to a lack of work.   Compare Arive Aff. ¶ 50 ("On April 3, 2003, Marc Gavin told me to go home, because there was not enough work."), with Arive Aff. ¶ 94 ("I was told by Diane [sic] Bell that Marc Gavin told me to go home, so I clocked out and went home.").   Arive testified in her deposition that Gavin was the one who instructed her to leave early.   See Arive Dep. at 37-40.   However, in her response to Essilor's motion, Arive states that she does not dispute Essilor's following statement of material fact:   "Gavin asked Dianne Bell, who was acting as the Team Lead that day, to instruct Karen Arive and Erin Striby to leave early before the end of their shift because of the lack of work."   See Pl. Resp. Br. at 17; see also Pl. Resp. Br. at 22 ("It is undisputed that supervisor Bell 'told Arive to go home' and Arive did go home.").

If Bell was not the one who instructed Arive to leave early, Bell's testimony concerning Arive's response to her instruction (*i.e.*, that Arive threw a tray and used expletives) would be called into doubt.   And Essilor claims that Bell's account was subsequently relayed to Gavin, Miller, and Boyle as part of their decisionmaking process about Arive's termination.   Resolution of this discrepancy is ultimately unnecessary, however, because Arive's interaction with Bell was not material to Essilor's final decision to terminate Arive.   The parties agree that Arive was terminated for her alleged insubordinate conduct in refusing to talk to Gavin, and not because of her use of expletives, throwing a tray, or any other alleged inappropriate conduct toward Bell.   See Pl. Resp. Br. at 23; Def. Rep. Br. at 13; see also Miller Dec. ¶ 10; Gavin Dep. at 120-22.

that he did not feel Arive's behavior could be tolerated and that she should be terminated.  *Id.*

Either later that day or the next, Miller discussed the incident with Bell. Bell explained to Miller what had happened and also provided Miller with a written statement describing the events that occurred after Arive was instructed to leave for the day.  See Miller Dec. ¶ 6, Ex. A; Miller Dep. at 118-20.  Miller concluded that Arive should be terminated for insubordination and gross misconduct because she had ignored Gavin's requests to talk with him as she exited the building.  Miller Dec. ¶ 10; Miller Dep. at 121.  Essilor's Employee Handbook provides that unacceptable behavior, such as "insubordination or other disrespectful conduct," may result in disciplinary action up to and including termination.  Miller Dec. ¶ 13, Ex. B.

Miller spoke by telephone with Essilor's Area Human Resources Manager, Chris Boyle, before finalizing his decision to terminate Arive's employment.  Miller advised Boyle that he wished to terminate Arive because of her insubordinate conduct.  Miller Dec. ¶ 11; Miller Dep. at 121.  Miller also had Gavin speak with Boyle by telephone.  Gavin Dec. ¶ 13; Gavin Dep. at 97-98.  Boyle advised Miller that he thought termination would be appropriate.  Miller Dec. ¶ 11; Miller Dep. at 121.  Miller then told Gavin that he thought the appropriate course of action was to terminate Arive.  Gavin Dep. at 92.  Miller and Gavin both testified that Arive's age had no bearing on the decision to terminate her and that her age was

not discussed during any conversations about her discipline.  Miller Dec. ¶¶ 10-12; Gavin Dec. ¶¶ 12-13.

Arive did not report to work on Friday and did not speak with anyone from Essilor until she returned to work on Monday, April 7th.  Arive Dep. at 43-44.  On Monday morning, Smith told Arive to report to Gavin's office.  Arive Aff. ¶ 58.  Gavin and Smith informed Arive that her employment was terminated because of her insubordination on the previous Thursday.  Gavin Dep. at 105-07; Arive Aff. ¶ 59; Arive Dep. at 58-59.  Arive complained that her termination was age discrimination.  Arive Aff. ¶ 60; Gavin Dep. at 107.

Both Miller and Gavin testified that Arive never made any complaints to them about age discrimination prior to her termination on April 7, 2003.  They also testified that Smith never communicated Arive's complaints about discrimination to them and that they were not aware of any complaints of age discrimination by Arive prior to her termination.  Miller Dec. ¶¶ 7-9; Gavin Dec. ¶¶ 8-10.

Arive testified that Essilor had a progressive discipline policy that "provided for a Step 1 and a Step 2 before termination."  Arive Aff. ¶ 72.  Miller testified that Essilor typically used progressive counseling unless confronted with a situation of gross misconduct, in which case branch managers were authorized to terminate employees.  Miller Dep. at 150.

On April 17, 2003, Arive filed a charge of age discrimination with the Equal Employment Opportunity Commission ("EEOC").  Arive Dep. at 87, Ex. 5; Arive Aff. ¶ 66.  Arive continued to complain to Essilor about age discrimination by telephone and by letter after filing her EEOC charge.  Arive Aff. ¶ 70.

*Discussion*

I.    *ADEA Discrimination Claim – Disparate Treatment*

The Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, prohibits an employer from discharging or otherwise discriminating against an employee over 40 years old because of the employee's age.  29 U.S.C. §§ 623(a), 631(a); *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 141 (2000). Arive claims that she was terminated because of her age in violation of the ADEA. Arive also claims that Essilor discriminated against her in violation of the ADEA by writing her up on two occasions for proofreading mistakes while not writing up younger employees for similar mistakes.  See Cplt. ¶¶ 11,14.

A plaintiff can prove age discrimination using either the direct or indirect method of proof.  *Isbell v. Allstate Ins. Co.*, 418 F.3d 788, 794 (7th Cir. 2005).   In the short portion of her brief discussing the legal analysis, Arive has relied upon the indirect method of proof.

A.     *Prima Facie Case*

Arive's discrimination claim cannot succeed using indirect evidence under the burden-shifting framework adapted from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  To defeat summary judgment by using the indirect method of proof, a plaintiff first must establish the elements of a prima facie case of discrimination.  If the plaintiff meets this burden, the defendant may rebut the plaintiff's prima facie case by articulating a legitimate, non-discriminatory reason for the employment action.  The plaintiff must then present evidence that could allow a reasonable jury to find that the employer's stated reason was not a true reason but a pretext.  See *Reeves*, 530 U.S. at 142-43 (applying indirect method of proof to age discrimination claim).  The plaintiff carries the ultimate burden of persuading the trier of fact that the defendant discriminated against the plaintiff based on age.  *Id.* at 143.

To establish a prima facie case of age discrimination, the plaintiff must show that:  (1) she is a member of the protected class of persons who are at least 40 years of age; (2) her performance met her employer's legitimate expectations; (3) she was subject to an adverse employment action; and (4) her employer sought a substantially younger replacement for her or otherwise treated substantially younger employees more favorably.  *Id.* at 142; *Hoffmann v. Primedia Special Interest Publications*, 217 F.3d 522, 524 (7th Cir. 2000).

Arive describes the *McDonnell Douglas* method as "not a rigid test, but rather an example of circumstances, among others, which give rise to an inference of discrimination," and she argues that she need not satisfy the test's requirements.  Pl. Resp. Br. at 30.  None of the authority cited by Arive stands for this broad proposition that would excuse her from satisfying all the elements of the prima facie case. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 ( 2002), held that it is not necessary to plead the elements of a prima facie case to survive a Rule 12 motion to dismiss a complaint.  *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308 (1996), held that a terminated employee need not prove he was replaced by someone outside of the protected class for ADEA claim.  *Rudin v. Lincoln Land Comm. College*, 420 F.3d 712 (7th Cir. 2005), recognized that a plaintiff could avoid summary judgment on a Title VII disparate treatment claim either by putting in enough direct evidence of discriminatory motivation to create triable issue or by satisfying *McDonnell Douglas* framework).  *Malacara v. City of Madison*, 224 F.3d 727 (7th Cir. 2000), recognized that a prima facie case will not save a plaintiff's race discrimination claim if the defendant has met its burden of articulating a non-discriminatory reason for its actions).  *Echols v. Select Beverages, Inc.*, 64 F. Supp. 2d 807 (S.D. Ind. 1998), applied the *McDonnell Douglas* analysis.

A.     *Performance Counseling*

Arive's discrimination claim based on her performance counseling fails both because she cannot show that the counseling constituted an adverse employment

action under the ADEA and because she cannot identify younger, similarly situated employees who were treated more favorably.

First, no reasonable jury could conclude that Smith's counseling or the corresponding incident reports constituted a materially adverse employment action.  A written reprimand generally is not considered an adverse employment action unless it carries with it some concrete effect on an employee's position, pay, benefits, or prospects with the employer.  See *Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004) (recognizing that letters of warning would not constitute adverse employment action under the ADEA), citing *Grube v. Lau Industries, Inc.*, 257 F.3d 723, 728 (7th Cir. 2001) (negative performance evaluations and unfair reprimands not adverse employment actions), and *Oest v. Illinois Dep't of Corrections*, 240 F.3d 605, 613 (7th Cir. 2001) (oral and written reprimands not adverse employment actions).

There is no evidence that Smith's counseling sessions or the corresponding incident reports had any effect on Arive's terms or conditions of employment. Indeed, Arive testified:  "The write ups were not discipline, but they were placed in our files in order to make the performance of us older employees look bad, when we were actually good performers." Arive Aff. ¶ 43.  Arive acknowledges that Gavin and Miller did not review her personnel file prior to the decision to terminate her, Pl. Resp. Br. at 6, and that "the two-write ups had nothing to do with her termination." Pl. Resp. Br. at 32.  Accordingly, the court cannot conclude

that Arive's performance counseling constituted a materially adverse employment action under the ADEA.

Second, Arive cannot identify a younger, similarly situated employee who was treated more favorably.  Arive asserts that her younger co-workers made even more proofreading errors than she did but were not counseled or written up.  To meet her burden of identifying a similarly situated employee, Arive must identify a co-worker that is directly comparable to her in "all material respects." *Grayson v. O'Neill*, 308 F.3d 808, 819 (7th Cir. 2002).  In evaluating potential comparators, the court should consider all relevant factors including whether the employees were "subject to the same standards."  *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002), quoting *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 618 (7th Cir. 2000).

Arive was not similarly situated to any of her co-workers when it came to proofreading.  Arive was the only full-time proofreader at the Bell-Duffens laboratory.  Other employees simply filled in at times to perform proofreading tasks.  This distinction is fundamental, and it would justify subjecting Arive to a higher performance standard.  *E.g.*, *Patterson*, 281 F.3d at 680-81 (employee not similarly situated when he held entirely different job position than plaintiff).

Arive cannot establish a prima facie case of age discrimination based on the two instances in which she was counseled for performance mistakes.  Therefore,

the court need not address the parties' arguments about pretext concerning those events.

B.    *Termination*

Arive's discrimination claim based on her termination also fails as a matter of law.  Arive cannot identify younger, similarly situated employees who were treated more favorably.  In addition, Arive has not presented evidence from which a reasonable jury could conclude that Essilor's stated reason for terminating her was pretextual.

Arive can establish the first and third elements of her prima facie case:  she was a member of the protected class and she was subject to the adverse employment action of termination.  For purposes of summary judgment, the court also assumes that Arive's work performance, up until the time of her termination, was meeting Essilor's expectations.  See *Jones v. Union Pacific R. Co.*, 302 F.3d 735, 742 (7th Cir. 2002) (in unusual cases where employee is fired for a sudden and egregious violation of company policy, courts have assumed that the second element is met and moved to the pretext inquiry).

With respect to the fourth element, Arive has not shown that she was treated less favorably than a similarly situated, younger employee.  A similarly situated employee in this case would be an Essilor employee who, a supervisor concluded, had engaged in insubordinate conduct.  The fact that no other Essilor

employee may have previously engaged in similar conduct does not exempt Arive from meeting this requirement in the absence of direct evidence of age discrimination.[4]

Arive cannot create a genuine issue of fact as to whether she was treated less favorably than a younger employee who was concluded to have engaged in insubordinate conduct.   Arive points to only one Essilor employee, Rachel Ridpath, as a potential comparator.   Ridpath was 31 years old in early 2003. Miller Dec. ¶ 15.  Arive testified that Ridpath argued loudly with Essilor employees such as Alicia Smith on several occasions but was not disciplined.   Arive Aff. ¶¶ 17-19.   Arive also points out that, in January 2003, Ridpath received performance counseling for failing to enter data as she had been instructed the day before.   Gavin Dec. ¶ 7, Ex. A; Smith Dep. at 37.   Arive analogizes Ridpath's failure to follow these instructions with her own alleged failure to follow Gavin's

---

[4]Arive contends that"[w]hen there are no similarly situated employees, the plaintiff is not expected to compare herself to non-existent employees" and therefore she need not satisfy this element of her prima facie case. See Pl. Resp. Br. at 30.  Arive cites *Bellaver v. Quanex Corp.*, 200 F.3d 485 (7th Cir. 2000) for this proposition, but *Bellaver* arose in a very different context and did not remove the fourth element from the well-established *McDonnell Douglas* test.  In *Bellaver*, the court recognized that a single discharged employee need not show that similarly situated employees were treated better when "the inference of discrimination arises from the fact that they [sic] were constructively 'replaced' by workers outside of the protected class."  200 F.3d at 495.  Unlike the employer in *Bellaver*, Essilor does not contend that Arive's termination was a result of corporate reorganization, so *Bellaver*'s reasoning is not applicable here.  Even if *Bellaver* were relevant, Arive could not meet its conditions.  Following Arive's termination, her proofreading work was spread among several employees, including Penny Miller and Dianne Bell who were both at least 50 years old. Gavin Dep. at 53; Miller Dec. ¶ 15.

oral instructions to speak with him.  Arive argues that Ridpath's circumstances demonstrate that Essilor had a system of progressive discipline that was not followed in her case.

Arive's arguments are not persuasive.  Ridpath was not similarly situated to Arive because she did not engage in conduct comparable to that for which Arive was disciplined.  See *Radue*, 219 F.3d at 617-18 (plaintiff normally must show that the employees had "engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them"); *Hiatt v. Rockwell Int'l Corp.*, 26 F.3d 761, 771 (7th Cir. 1994) (employees alleged to have committed alcohol-related offenses were not similarly situated to plaintiff accused of falsifying records).  Merely arguing with a fellow employee, even a supervisor, is not equivalent to deliberately defying a supervisor's order as Arive is alleged to have done.  *Oest*, 240 F.3d at 614 (female plaintiff who refused to search visitor to the jail was not similarly situated to male employee who "complained loudly" but performed search).  Similarly, Ridpath's incident report shows that her failure to follow written instructions about entering data amounted to ordinary negligence and was not an act of defiance.  No reasonable jury could conclude that Ridpath was similarly situated to Arive based on these two incidents.  Accordingly, Essilor is entitled to summary judgment on Arive's claim of disparate treatment based on age.[5]

---

[5]In fact, evidence about Ridpath's performance counseling undercuts Arive's discrimination claim (discussed above) that younger employees were not written

(continued...)

B.    *Pretext*

Arive's discrimination claim also fails because Arive has not presented evidence from which a reasonable jury could conclude that Essilor's proffered reason for terminating her was pretextual.   Miller testified that Arive was terminated for insubordinate conduct by ignoring Gavin's request to speak with her.  The Seventh Circuit has consistently held that insubordination can be a legitimate non-discriminatory justification for an adverse employment action. See, *e.g.*, *Vukadinovich v. Bd. of School Trustees of North Newton School Corp.*, 278 F.3d 693, 699 (7th Cir. 2002); *McClendon v. Indiana Sugars, Inc.*, 108 F.3d 789, 797 n.7 (7th Cir. 1997).

Arive's principal argument is that she did not commit the conduct of which she was accused.  Arive contends that she informed Gavin that she would not be at work on Friday, Gavin said nothing in response, and therefore she left the building as previously instructed.

This factual dispute between the parties does not prevent summary judgment on Arive's discrimination claim.  See, *e.g.*, *Jones*, 302 F.3d at 744 (plaintiff's contention that he had not committed insubordinate or quarrelsome conduct did not preclude summary judgment in favor of employer that honestly believed reports of such conduct by its officers).  "Arguing about the accuracy of

---

[5](...continued)
up for their performance mistakes.

the employer's assessment is a distraction . . . because the question is not whether the employer's reasons for a decision are '*right* but whether the employer's description of its reasons is *honest.*'"  *Id.*, quoting *Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 677 (7th Cir. 1997), quoting in turn *Gustovich v. AT&T Communications, Inc.*, 972 F.2d 845, 848 (7th Cir. 1992) (emphasis in original).  To show pretext here, Arive must present evidence that would allow a jury to find that the Essilor managers who made the decision to fire her did not honestly believe that she had behaved insubordinately.  She has failed to do so.

The court considers both Miller and Gavin as the decision makers with respect to Arive's termination.  Gavin testified that generally he would devise an appropriate disciplinary action for an employee and present it to Miller.  It is unclear from the record whether Gavin had the authority to hire and fire employees.  Gavin Dep. at 41-44.  Regardless, Arive has presented no evidence from which a reasonable jury could conclude that either Gavin or Miller did not honestly believe she had behaved insubordinately.

Arive admits that Miller spoke with both Gavin and Bell and consulted with Chris Boyle, Essilor's Area Human Resources Manager, before recommending her termination.  Arive does not dispute the content of any of these conversations. Instead, she disputes the truth of the underlying facts that were communicated, and she argues vigorously that "Gavin and Bell talked together and made up lies . . . in order to get her in trouble."  Pl. Resp. Br. at 19.  But Arive offers no

evidentiary support for this statement other than her own account of the events in question.  Although Arive's testimony might support a theory that Gavin was mistaken in concluding that she had intentionally ignored him, it is insufficient to call into question the honesty of his ultimate belief that she had behaved insubordinately.[6]

Summary judgment is generally inappropriate where a plaintiff can show that an employee with discriminatory animus provided factual information or other input that may have affected the adverse employment action.  See *Alexander v. Wisconsin Dept. of Health and Family Services*, 263 F.3d 673, 684 (7th Cir. 2001); *Dey v. Colt Const. & Dev. Co.*, 28 F.3d 1446, 1459 (7th Cir. 1994).  For example, Arive could show pretext if she presented evidence demonstrating that Gavin or Bell harbored a discriminatory animus toward her and that this animus tainted the decision-making process.  *Alexander*, 263 F.3d at 685; see also *Russell v. Bd. of Trustees of Univ. of Illinois at Chicago*, 243 F.3d 336, 342 (7th Cir. 2001) (decisionmaking process tainted by supervisor's improper motives because

---

[6]Arive claims that the testimony of Paulette Massey also supports her version of the events.  Massey testified that Gavin said Arive's name but that Arive's back was to him.  Massey also testified that "Marc Gavin did not tell Karen Arive not to clock out or not to go home as she had been told to do."  See Massey Aff. ¶¶ 33-37.  Massey's testimony is not inconsistent with Gavin's account of the events.  At most, it would support a finding that Arive did not intentionally ignore Gavin.  But it does not prove discriminatory animus on the part of either Gavin, Bell, or Miller.  *Alexander v. Wisconsin Dept. of Health and Family Services*, 263 F.3d 673, 685 (7th Cir. 2001) (no finding of pretext despite co-worker affidavit testimony that supported plaintiff's version of events but did not contain evidence of discriminatory animus on the part of plaintiff's supervisor or ultimate decisionmaker).  Accordingly, Massey's testimony does not help Arive show that Essilor's reason for terminating her was pretextual.

of supervisor's active involvement in process was sufficient evidence of pretext to survive summary judgment). Arive also could show pretext by presenting evidence that Miller himself harbored a discriminatory bias against her because of her age. See *Alexander*, 263 F.3d at 685. She has offered no evidence demonstrating either circumstance.

Arive criticizes several aspects of Essilor's decision-making process, but none of her criticisms cast doubt on the honesty of that process. Arive argues that Miller should have interviewed her to get her side of the story before making a decision to terminate her. While some employers might have interviewed an employee in Arive's circumstances, Essilor's failure to do so does not necessarily demonstrate pretext. Cf. *Kariotis*, 131 F.3d at 677 (for purposes of pretext inquiry, employer's failure to interview employee's physician before making termination decision for disability fraud did not necessarily call into question the honesty of its decision).

Arive also criticizes Essilor for not consulting with her usual Team Lead, Alicia Smith, before reaching a final decision about her termination. But Smith was not at work on April 3rd and would have no personal knowledge of the events that had occurred. Finally, Arive claims that Essilor's failure to follow its progressive discipline process is evidence of pretext. However, Miller's testimony and Essilor's Employee Handbook make clear that the company may proceed directly to termination when an employee commits insubordination. And Arive

has offered no evidence that Essilor's choice to do so in her case was discriminatory.

The Seventh Circuit has repeatedly cautioned in employment discrimination cases that federal courts do not sit as super-personnel departments to reexamine an entity's business decisions. *E.g.*, *Holmes v. Potter*, 384 F.3d 356, 361-62 (7th Cir. 2004). It is not the court's role to criticize what might be even a shoddy investigation unless there is some evidence indicating that the investigation would have been conducted differently or more carefully if a younger employee were being fired. *Kariotis*, 131 F.3d at 677.

Arive's other criticisms of Essilor also miss the mark. Arive points out that she had received attendance awards and was generally considered a good employee, and that neither Gavin nor Miller reviewed her annual performance evaluations before making a decision to terminate her. These points are irrelevant. Essilor does not claim that it terminated Arive for poor performance, but that it did so for insubordinate conduct. Arive also argues that she merely followed the normal procedure for requesting a day off from work, and that Essilor has still provided no reason as to why she needed to be at work the next day. This criticism is irrelevant as well because Arive was not terminated for her absence on Friday but for her alleged misconduct the day before.

Arive offers several allegations from which she urges the court to infer that Essilor discriminated against her because of her age, apparently outside the structure of the indirect method of proof.  First, Arive alleges that she was terminated in the same time frame that Essilor terminated or reduced the hours of other older employees.  Arive Aff. ¶¶ 96-100; Massey Aff. ¶ 16.  She points to three other older employees who quit working for Essilor around the same time.  Arive Aff. ¶¶ 45-47.  Next, Arive argues that Essilor previously showed favoritism toward younger employees when it assigned Miller to be manager of the merged Bell-Duffens lab and when Miller promoted Gavin to supervisor in place of Libby Muse, who was in her 50's.  Arive Aff. ¶¶ 6-7, 11.  Arive points out that Gavin had no experience in the optical industry before coming to Bell-Duffens.  Arive notes that Muse filed an EEOC charge of age discrimination against the company in 2001.  Miller Dep. at 57.  Finally, Arive complains that Gavin and Miller typically smiled and engaged in friendly conversation with other young employees, but that they "barely spoke" to the older employees like herself.  See Arive Aff. ¶¶ 13-16; Massey Aff. ¶¶ 10-12.[7]

---

[7]Arive also testified that other older co-workers complained to her that they were being treated worse than younger employees.  Arive Aff. ¶ 44.  This testimony is inadmissible hearsay and is too vague to create an issue of fact on the matter.  Arive also has offered the testimony of former co-worker Paulette Massey concerning the alleged differential treatment between younger and older workers at the Bell-Duffens lab.  The court has considered Massey's testimony where appropriate, but some of it raises no inference of mistreatment *based on age*.  See, *e.g.*, Massey Aff. ¶¶ 19-23 (testimony that Gavin burned Massey's arm with a tank of pressurized air and then "got mad" when Massey complained to the company safety officer).

These general allegations are scattered throughout different sections of Arive's brief, and she has made no effort to develop any argument that she can satisfy the direct method of proof.  In fact, the briefs of both parties focus on the indirect *McDonnell Douglas* analysis.  The court is not inclined to construct arguments on behalf of the parties.  Even if Arive had constructed an argument relying on circumstantial evidence, however, her evidence would fall well short of what would be needed for a reasonable jury to infer intentional discrimination.

First, Arive offers little evidence about the background and comparative circumstances of the three other employees who she claims were also unlawfully terminated because of their age.  Testimony about other employees in the protected class can sometimes provide a basis for an inference that "discriminatory attitudes permeate a firm's employment policies and practices." *Mattenson v. Baxter Healthcare Corp.*, 438 F.3d 763, 770 (7th Cir. 2006) (holding that it was not reversible error for court to allow testimony at trial on disparate treatment claim about alleged age discrimination against other employees in plaintiff's division).  In a disparate treatment case, however, this type of evidence is only collaterally relevant to evidence of specific discrimination against the plaintiff herself.  *Gilty v. Village of Oak Park*, 919 F.2d 1247, 1252 (7th Cir. 1990). Arive has not articulated how evidence that three other older employees were terminated in the same month creates an inference that her termination, certainly involving different conduct and possibly involving different supervisors, was itself discriminatory.

In addition, Arive acknowledges that her theory as to why Gavin and not Libby Muse became supervisor of the Bell-Duffens lab is based on pure speculation. Arive Dep. at 109. And she has offered no evidence about the circumstances surrounding the resignations of three older employees. Without such evidence, the court cannot conclude that they implicate age discrimination by Essilor.

Finally, the unfriendly behavior of which Arive accuses Gavin and Miller is insufficient to infer discriminatory bias on their part. In *Troupe v. May Dept. Stores Co.*, the Seventh Circuit wrote that "behavior toward or comments directed at other employees in the protected group" can be circumstantial evidence of discrimination. 20 F.3d 734, 736 (7th Cir. 1994). Arive offers no evidence of any biased remarks. And what evidence she does offer is "far too remote and insubstantial to permit a trier of fact to find direct discrimination." *Haywood v. Lucent Technologies, Inc.*, 323 F.3d 524, 530 (7th Cir. 2003) (supervisor's bigoted remarks not made contemporaneously with or in reference to plaintiff's termination could not support a race discrimination claim based on direct evidence). In general, Arive's circumstantial evidence is not sufficiently related to either of her alleged adverse employment actions to raise an inference of intentional discrimination. See *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir. 2003) (even if decision maker was "personally disinclined to give African-Americans the benefit of the doubt and thus was biased against them," plaintiff still had no triable issue on circumstantial mosaic theory because bigotry was not

linked to plaintiff's termination); *Gorence v. Eagle Food Centers, Inc.*, 242 F.3d 759, 762 (7th Cir. 2001) (recognizing that bigotry alone is not actionable and that plaintiff must show that decision maker expressed biased feelings around the time of and in reference to the relevant employment action).

All of this evidence does not show pretext because it does not call into question the honesty of Essilor's belief that Arive had committed insubordinate conduct.   Arive's own belief that Essilor's decision-making process and its resulting decision to terminate her were somehow discriminatory is insufficient to defeat Essilor's motion for summary judgment.   See *McDonald v. Village of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004) (inferences supported by only speculation or conjecture will not defeat a summary judgment motion).   Because Arive has not presented evidence from which a reasonable jury could conclude that Essilor's stated reason for terminating her is pretextual, Essilor's motion for summary judgment on Arive's discrimination claim must be granted.[8]

---

[8]Arive's complaint about a reduction in hours cannot serve as an independent basis for her age discrimination claim.   Arive has failed to identify specific younger employees who she believes were treated more favorably, and Miller's unrebutted testimony is that all Bell-Duffens hourly employees suffered a cut in hours at the time.   See Miller Dep. at 135-36.   Moreover, Arive testified in her deposition that the performance counseling for her proofreading errors was her only basis for asserting age discrimination against Essilor.   See Arive Dep. at 89.   None of Arive's other miscellaneous complaints about her work environment rise to the level of an adverse employment action under the ADEA.

II.    *ADEA Retaliation Claim*

Arive's termination also forms the basis of her retaliation claim against Essilor.  The ADEA prohibits employers from retaliating against employees who complain of unlawful age discrimination in violation of the ADEA.  29 U.S.C. § 623(d).  Arive claims that she was terminated as a result of complaining about age discrimination.

Essilor contends at the outset that Arive's retaliation claim is barred because it is beyond the scope of her EEOC charge.  See generally *Sitar v. Indiana Dep't of Transportation*, 344 F.3d 720, 726 (7th Cir. 2003); *Peters v.  Renaissance Hotel Operating Co.*, 307 F.3d 535, 550 (7th Cir. 2002); *Kristufek v. Hussmann Foodservice Co.*, 985 F.2d 364, 368 (7th Cir. 1993).

The court does not reach a conclusion on this legal issue because on the merits Arive's retaliation claim fails as a matter of law.  There are two ways for a plaintiff to defeat summary judgment on a retaliation claim.  The first method is adapted from the *McDonnell Douglas* framework discussed above.  It requires that the plaintiff initially show that (1) she engaged in the protected activity of complaining about unlawful discrimination; (2) she was performing her job in a satisfactory manner; (3) she was subjected to an adverse employment action; and (4) only she, and not any similarly situated employee who did not complain of discrimination, was subjected to the adverse employment action.  See *Stone v. City of Indianapolis*, 281 F.3d 640, 644 (7th Cir. 2002); see also *Racicot v. Wal-Mart*

*Stores, Inc.*, 414 F.3d 675, 678-79 (7th Cir. 2005) (applying test articulated in *Stone* to ADEA retaliation claim); *Rockwood v. AT&T Wireless Services, Inc.*, 2006 WL 278416, *7 (S.D. Ind. Feb. 3, 2006) (same).   As shown above, Arive cannot identify another Essilor employee who kept her job despite the employer's conclusion that he or she had engaged in comparable insubordinate conduct, let alone an employee in this category who also did not complain about age discrimination.   Accordingly, Arive's retaliation claim cannot survive summary judgment using the indirect method of proof.

Under the second method, a plaintiff must present direct evidence that she engaged in statutorily protected activity and, as a result, suffered an adverse employment action.   *Stone*, 281 F.3d at 644.   Arive engaged in statutorily protected activity when she complained to Smith on two occasions about age discrimination.   Arive unquestionably suffered an adverse employment action when she was terminated.   Because Arive has offered no evidence of a causal link between these events, however, her retaliation claim fails as a matter of law.

The question of how much evidence a plaintiff must present to establish a triable issue that an employer's adverse action was retaliatory "is not susceptible of a general answer."   *Stone*, 281 F.3d at 644.   Typically, however, there can be no causal link between the plaintiff's protected activity and her termination if the employer was unaware of the protected activity.   See, *e.g., Dey v. Colt Const. & Dev. Co.*, 28 F.3d 1446, 1458 (7th Cir. 1994).

Arive has offered no evidence demonstrating that Miller and Gavin were aware of any of her complaints about age discrimination. Arive was asked in her deposition if she complained about age discrimination other than in her two meetings with Smith and in her termination meeting on April 7th, and she responded, "No, just those." Arive Dep. at 78-79. Both Miller and Gavin testified that Arive's complaints to Smith were not relayed to them. The evidence shows, at most, that Gavin and Miller knew that Arive (like other Essilor employees) was unhappy about her hours being reduced and about the performance counseling she had received. The evidence also shows that it was common knowledge that Arive had threatened to hire a lawyer and sue Essilor if anything happened to her.

Arive argues that Gavin and Miller should have known that Arive would sue for age discrimination because she was a 61-year-old white female. Pl. Surr. Br. at 9. This argument is not persuasive, and Arive's vague threats of litigation were insufficient to put Essilor on notice that she believed she was being discriminated against because of her age. In addition, Arive's testimony from her affidavit that she "continued to complain about discrimination" in March 2003 is generally vague, does not clarify or augment her deposition testimony, and cannot create a genuine issue of fact on this issue. See *Adusumilli v. City of Chicago*, 164 F.3d 353, 360 (7th Cir. 1998) ("A party cannot prevail on a motion for summary judgment by 'submitting an affidavit containing conclusory allegations which contradict plain admissions in prior deposition or otherwise sworn testimony.'"), quoting *Diliberti v. United States*, 817 F.2d 1259, 1263 (7th Cir. 1987). Finally,

Arive's complaints of discrimination after she was terminated cannot help her retaliation claim. In sum, even when the evidence is viewed in the light reasonably most favorable to Arive, she has not identified a genuine issue of fact that Gavin and Miller were aware of her age discrimination complaints prior to her termination.[9]

---

[9]Arive has identified testimony by Smith that she argues demonstrates that Gavin and Miller were aware of her complaints of age discrimination. Arive claims that Smith testified that Arive, Hornaday, and Miller complained about discriminatory discipline and that their complaints were relayed to Gavin who told them "not to worry about age." Arive also claims that Smith testified Arive often complained that Essilor was trying to fire her. See Pl. Resp. Br. at 7-8.

Arive mischaracterizes both portions of Smith's testimony. First, Smith was asked whether the three employees complained that they were being discriminated against on the basis of age, and she specifically testified that they did not. Smith testified that they "just felt like they were being pointed out, period." Smith Dep. at 19-20. Smith testified that nearly all employees who were disciplined responded similarly. Smith's testimony about Gavin's mention of age relates only to his attempt to alleviate any concerns introduced by Hornaday's own suggestion that she felt her mistakes were a result of her age. Smith Dep. at 24-25, 58-59. Second, it is not at all clear that Smith responded affirmatively when asked if Arive complained that Essilor was trying to fire her. See Smith Dep. at 22. Even if Smith's answer could be interpreted as an affirmative response, she did not testify that Arive complained specifically of age discrimination. Smith's testimony, as cited by Arive, does not raise a genuine issue of fact about any additional complaints of age discrimination.

Arive also points to Miller's own testimony as demonstrating his awareness of her complaints of discrimination. Miller's testimony does not provide the support Arive seeks. Although Miller testified that Arive complained about her hours being reduced, he was neither asked about, nor did he suggest, that Arive complained of discrimination. See Miller Dep. at 97-98. Miller also testified that it was general knowledge that Arive had threatened to sue the company. He specifically testified, however, that none of her complaints mentioned age discrimination. See Miller Dep. at 134-36, 159-60.

Arive argues that Gavin and Miller should be charged with notice of Arive's complaints to Smith because they supervised Smith.  A plaintiff may survive summary judgment by presenting circumstantial evidence that would support an inference that her employer was aware of her protected activity.  See, *e.g.*, *Dey*, 28 F.3d at 1458 (retaliation claim should survive summary judgment where employee to whom plaintiff complained participated in evaluation of plaintiff's performance and was present in meeting where discharge decision was made).

Arive has not offered even circumstantial evidence from which a reasonable jury could conclude that Gavin and Miller had notice of her complaints.  First, the evidence shows that Smith had no involvement in Arive's termination.  Smith was not present on the day of Arive's alleged misconduct and did not participate in the decision-making process that led to her termination.  Smith testified that she knew nothing about Arive's situation until the day of her termination, when Gavin requested that she ask Arive to join the two of them in the conference room. Second, Arive has offered no evidence suggesting that Smith ever shared employee feedback from performance counseling sessions with Gavin or Miller.

Because Arive has not offered evidence from which a reasonable jury could conclude that Gavin or Miller were aware of her discrimination complaints, she cannot demonstrate that her termination was causally connected to her protected activity.  The court also notes that the timing of Arive's termination provides little support for her retaliation claim.  Arive's termination occurred in April 2003 and

her most recent complaint to Smith was at least two months prior.  Arive's first complaint was about one month before that.  This modest time lapse does not paint a picture of a discharge "on the heels of protected activity."  *Filipovic v. K&R Express Systems, Inc.*, 176 F.3d 390, 399 (7th Cir. 1999) (four month time lapse was counter-evidence of any causal connection between protected activity and adverse employment action).  For all of these reasons, Arive's retaliation claim fails as a matter of law.

## Conclusion

Defendant's motion for summary judgment (Docket No. 36) is granted as to both plaintiff's discrimination and retaliation claims under the ADEA.  Defendant's motion to strike plaintiff's surreply brief (Docket No. 65) is denied.  Final judgment shall be entered accordingly.

So ordered.

Date:  March 30, 2006

_____
DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Stuart R. Buttrick
BAKER & DANIELS
srbuttri@bakerd.com

Richard L. Darst
COHEN GARELICK & GLAZIER
rdarst@fed-law.com

David A. Given
BAKER & DANIELS
dagiven@bakerd.com